Good morning, Your Honors. My name is Duke Walquist and I represent the appellant Eastwood Insurance. I would like to reserve roughly half my time for rebuttal if that's deemed appropriate by the court. The point I think I want to jump immediately to, even after all of the briefing, is the interpretation of what's called Condition C in the policy, which provides that all claims alleging, arising out of, based upon, or attributable to the same facts, circumstances, situations, transactions, or even other circumstances, are subject to the same conditions. That was the basis, that provision was the basis for the District Court's decision below, after consideration, really of two principal authorities, one of which I think is a controlling authority, but was misapplied, and the other of which I think has no application. It involves different policy language and is of no persuasive effect. The controlling case, I believe, is Bay City's Paving and Graving Inc. v. Lawyers Mutual Insurance Group. That involved a policy provision that said two or more claims arising out of a single act, error, or omission, or a series of related acts, errors, or omissions, must be treated as a single claim. The reason that case is insightful and instructive and relevant is because it speaks to... Now, that language is not precisely the same either, is it? No, it's not. Okay. It's not. But it does speak to the use of the word related. Well, in one case, you want to compare precise language, and in the other case, you don't mind too much whether you use other language. Well... Why can't we use both cases? I think the reason you can't use the informant's case is it never uses the word related at all, and that is the operative word on which the district... Does it have to be related, or are they looking for an identity? Well, it can be either. It says the same or related. And I submit that the wrongful termination clearly does not... The identity can be the same as... It cannot necessarily be related. They may be independent acts in time that are precisely the same. Well, you're talking about acts that are two years different. One act didn't even occur until after the inception of this particular policy and well before the other claims. It's clearly not, in the language of the policy, the same fact, circumstance, situation, transaction, or event. Under any interpretation of the word same, I don't believe. And the district court... Does the same mean identical? It does. It means the same. All right. So we leap to the next clause, which is related facts, circumstances, situations, transactions, or events. That's where the district court hung its hat. It said it's related. And in the Bay City's case, which I talked about or identified briefly for the Court, what the Court did say in that case, and this is the California Supreme Court, and this case is governed by California law, says related is broad enough to encompass both logical and causal relationships. The district court then didn't really discuss... The district court recognized that, didn't really discuss any logical relationships between the wrongful discharge claim and the earlier harassment claim at all. It doesn't discuss it. But instead leaps to the causal discussion and says that Ms. Ayala alleges that this discharge was in retaliation for her earlier acts. Therefore, this is excluded. And that is fundamentally opposed to bedrock California insurance law that says you can't erect a fortress behind the pleadings. That if there's any possibility of a covered claim, there is still a duty to defend. The possibility for a covered claim that was articulated to USSIC, the insurance company, the district court, and that's articulated in our briefs is that it is entirely possible that the finder of fact in the underlying case would have accepted Ms. Ayala's testimony in opposition to the testimony of Eli Duran, Eastwood's manager, that Mr. Duran requested a doctor's note on November 30th rather than November 23rd. Now, Mr. Duran also denies any causal connection or retaliatory basis for demanding that doctor's note or the subsequent termination. But if you accept Ms. Ayala's testimony in that regard, then sure, there's a causal connection. But that was disputed. That was disputed in the underlying case. It's disputed today. And if you – but if you accept Ms. Ayala's testimony in that regard but were to ultimately accept Mr. Duran's position that it was not retaliatory, Eastwood would still have been liable because Eastwood would have not given Ms. Ayala 15 days to provide the requisite doctor's note for her extended medical leave under the Family Medical Leave Act. And we think fundamentally that's where the district court went awry. There are other reasons why we think Condition C doesn't even apply in this particular context, that it really speaks to the number of deductibles and or limits that might apply to the claims. Mr. Walquist, let me see if I understand what you're saying here. This FMLA violation was based upon your client's failure to give notice, the required 15 days notice. I'm sorry. They demanded that the plaintiff give medical verification of her claim within five days, I believe. And she was entitled to have 15 days under the FMLA. Well, what Mr. Duran said was he gave that notice on November 23rd. What Ms. Ayala said was he gave that notice on November 23rd. All right. What does the FMLA require? 15 days. 15 days. And she said that she was given less than 15 days. Correct. So if she's believed, then there's a violation of the statute, isn't there? Correct. And your client's going to be liable for that violation regardless of the motive. Correct. Correct? So her cause of action doesn't include any claim for animus, retaliation or whatever. As long as you didn't give the required notice, you're going to be liable under the FMLA, aren't you? That's correct. Even if she -- That is correct. All right. So I think you're saying what difference does it make that she claims it was retaliatory? We're going to be responsible under the FMLA no matter what the reason was. We don't think it was retaliatory, but it doesn't make any difference. We're liable under the statute. Is that your argument? That is, Your Honor. All right. And I've got 2 minutes and 15 seconds left. I'd like to reserve it, if I might. Good morning, Your Honors. May it please the Court, my name is Joseph Bailey, and I represent Apelli U.S. Specialty Insurance Company. It is a settled principle of California law that clear and explicit language in an insurance policy governs. The policies here plainly provide that claims alleging related facts or circumstances are deemed a single claim first made when the earliest such claim was made. All right. The counsel has also well established under California insurance law that an insurer must defend a suit which potentially seeks damages within the coverage of the policy. Am I right? Your Honor, only under a duty to defend policy. But even as discussed in U.S. Specialty's brief, the duty to defend was not triggered here because the claim was not tendered for a defense. Under this policy, if you give notice of a claim, the insurer has the duty to defend unless they actually tender the case for the carrier to defend. But even putting that issue aside. Are you liable for the cost of defense under the policy? For reimbursing defense costs, yes, Your Honor. So that's the same thing, isn't it? Whether you defend it or they defend it. Well, Your Honor. The issue is whether you're responsible for the cost of the defense, isn't it? Yes, but the standard differs. Under this Court's Pan-Pacific decision, after a case has been concluded, it's not the potential for coverage standard that governs whether defense costs are covered, but the actuality of coverage. But even putting that issue aside, the potential for coverage is determined according to a policy's language. And here the provisions apply to claims that allege related facts or circumstances. All right. Well, this is what bothers me. These are the plaintiff's allegations. The defendant didn't admit that this was a series of retaliatory events, did they? That's correct, Your Honor. All right. So who decides? Seems to me that they're entitled to say, no, this wasn't retaliatory. They're entitled to say that even if, you know, we're going to be liable under the FMLA, regardless of the motive for it, and since this happened within the terms of your policy, then we're covered. Now, what's wrong with that argument? Because the interrelated claims provision specifically uses the disjunctive. So it applies to claims alleging or actually involving related facts. And the reason why that's useful — Are you saying that your duty to provide coverage is based upon what someone other than your insured alleges? Yes, Your Honor. Whether it's true or not? Well, but it's — the language determines — So if I buy an insurance company from you and I've got coverage for an event, but the person who sues me characterizes it in a certain way that they claim things happened, then I don't have coverage based upon what they say? Your Honor, the — Even though I don't agree? It's a claims-made policy that determines when claims are deemed to arise based on what they allege. Now, the interrelated claims provision is a provision that applies even-handedly. So that could benefit insurers in some cases and insurers in others. And the reason why it's important to apply it according to its broad language is that — Well, let me answer my question. Are you saying that the plaintiff who frames the claim can determine whether or not the insured gets covered for it? Rather, when the claim is deemed to arise. But that seems to fly in the face of the California law that says that if it's potentially covered, then there's a duty to defend. And the defendant says, well, we weren't retaliating. We simply didn't give the required notice. So I don't — I see a conflict here. The Gray v. Surick case, if that's what you're referring to, Your Honor, does not apply here because in Gray, the Court did not hold that provisions which state that they apply based on allegations cannot apply based on allegations if disputed. Rather, Gray involved a provision which did not state that it applied based on allegations. And the Court said that if the carrier had wished for the provision to apply based on allegations, it could have written it to do so. And that's exactly what U.S. Specialty did here. Now, the benefit of applying these provisions to — based on allegations or actual facts, again, the disjunctive, is that it provides certainty to both insureds and insurers when a claim is deemed to arise. That allows carriers to issue policies to insurers against whom claims have been made without assuming the risk of future related claims. Well, how does it provide an insurer with any certainty of coverage if the plaintiff can determine by the plaintiff's allegations whether his claim is covered or not? Because as long as the insured does not have a gap in coverage, the interrelated claims provision is not going to determine whether a claim is covered, but just in what policy period it falls. Here, the insured had a gap in coverage. Eastwood did not have claims-made coverage in place when the prior claims were made. So, you know, as a result of that, the application of the provision here — Well, if they had had the coverage with a different insurer, I can tell you exactly what that insurer is going to be saying. They're going to say, no, that's happened after our policy ended and after yours began, aren't they? But if they're mere provisions applying based on actual facts or alleged facts, you only need one of the two, and you can't dispute what has been alleged. I mean, it's clear from the face of the complaint. So it's going to be really difficult for a prior carrier to dispute that, if you don't have a gap in coverage. It may be difficult, but there I see the insured in the middle, with the two insurance companies saying, oh, no, it's not related, and this one's saying it was related, and therefore it's under your policy, and you're saying it's under theirs, and the insured's kind of stuck in the middle because you're saying the whole thing is governed by what the plaintiff claims. Yes, Your Honor, and that's essential in order to allow carriers to protect one of the benefits of claims-made coverage for insureds and insurers alike. If a carrier cannot be sure that it's going to be able to avoid the risk of future-related claims, then when an insured has a claim made against it, that ups the ante for insuring that insured going forward. Well, here the claims are related only if you accept the plaintiff's version of the motive, right? Retaliatory. That's one of the reasons, Your Honor, yes. Well, this began with her claim that she had been sexually harassed by a supervisor before the policy came into effect, right? And she then claimed there were a variety of things the employer did after that that were in retaliation for her complaints about the supervisor's sexual harassment, right? Yes. And then after your policy came into effect, she applied for family medical leave. And your insured said, fine, give us medical proof within five days. And by golly, that was a violation of the FMLA because it requires 15 days. And so they're stuck with a statutory violation regardless of the motive, right? Yes, Your Honor. But the only thing that connected this with something before was the alleged motive, that it was retaliatory. That is one of the primary connecting factors, Your Honor. One of the other differences. And I guess I'm asking again, why should your insured suffer the loss of coverage simply because the plaintiff who sued them claims that they had an improper motive? Because the provisions plain language applies based on actual or alleged relations. And without that language, carriers cannot have the certainty that they need in order to issue policies to ensure it's against whom claims already have been made. That's one of the issues we're going to have to decide, is whether the mere allegation of a relationship is enough to deny coverage. Under the word alleging, yes, Your Honor. Very well. Thank you. So again, if the insured could dispute the, could escape the word alleging merely by disputing the alleged relationship, then you could be in a position in which two claims made policies would be triggered. Because the insured would dispute that they're related and there would be a possibility that they could be related and a possibility that they're not. So you could have two claims made policies end up responding to the same claim. Again, that would be contrary to the nature of claims made insurance and it would also create a disincentive for carriers to ensure insureds against whom claims have been made. The Graver-Zurich, another difference between this case and Graver-Zurich, is that the provision here is not an exclusion. It applies even-handedly to determine when claims have been deemed made. And again, the only reason that it has a preclusive effect here is that Eastwood had a gap in coverage, did not purchase claims made coverage for the time at which the prior claims were made. The case law supports the application of the policies plain language as well. The multiple California precedents, including this Court's WFS decision, have held that related claims are deemed first made when the first such claim was made, even if that's prior to the policy period. Again, typically that hasn't affected coverage because typically insureds don't have gaps in coverage. But when there is a gap in coverage, that should not expand coverage beyond that provided by the policies plain language. And it looks like I am out of time, so thank you. Thank you very much. Thank you. Briefly, Your Honor, the problem with the insurance company's argument here is it flatly contradicts the law of the State of California that says three things must be considered in looking at a duty to defend. The terms of the policy, the allegations of the complaint, and all other facts known to the insured, excuse me, to the insurer from any source. That is a fundamentally different rule than the so-called eight corners rule, which is adopted in some states, which says you simply compare the allegations, as USSIC would have you do here, with the complaint. That is not the law in California. It's never been the law in California. This Court, in two opinions by members of this panel, Standard Fire Insurance Company, the People's Church of Fresno, and Tom Hayward v. Centennial Insurance Company, has said that's not the law of the State of California. With respect to this certainty argument, you know, Eastwood disclosed the existence of Ms. Ayala and her earlier claims for sexual harassment in the application for this policy in response to Question 13e. If what USSIC wanted to do here was say, we want no part of any risk afforded by Ms. Ayala, they could have done that, and they could have done that quite straightforwardly. Was the premium set based on the prior event? Well, of course it was. They were new of the prior event when they charged the premium. It was increased or it remained the same, as if I walked in the door and asked for a policy? Well, I don't think that anybody said your premium based on that disclosure is going to be X. No one in fact was. Pardon me? Oh, no. Does the record show that? No. No. But what the record does show is the existence of the litigation was disclosed. And so, therefore, they could have set the premium any way they wanted. And you assume that that was factored in. Absolutely. I can see I'm effectively out of time, so unless there are questions that I should respond to. Well, we're fine. Thank you very much. Thank you. This matter will stand submitted, and we're going to take a brief recess.
judges: Graham, Pregerson, Beezer